534 A.2d 508

**James MITCHELL**

v.

**Sheila RANDALL and Royce Howard, Appellants.**

Superior Court of Pennsylvania.

Argued April 23, 1987.

Filed Dec. 8, 1987.

Shelly J. Leibel, Philadelphia, for appellants.

Neil Mittelman, Philadelphia, for appellee.

Before POPOVICH, JOHNSON and HESTER, JJ.

JOHNSON, Judge:

Sheila Randall appeals from an order of the Court of Common Pleas of Philadelphia County finding James Mitch-

ell to be the father of her son, Aaron Randall, born July 9, 1981. We affirm.

On November 9, 1983 appellee James Mitchell filed a petition for visitation alleging that he was the father of Aaron Randall. Sheila Randall filed an answer denying that Mitchell was the father and named Royce Howard as the biological father of the child. On March 8, 1984, the Court ordered Human Leukocyte Antigen (HLA) Blood tests of all parties involved.[1] At a hearing conducted on February 20, 1985, before the Honorable Jerome A. Zaleski, the blood test results of Mitchell and Howard were not admitted into evidence; thereafter, Judge Zaleski, by an order dated February 21, 1985, denied appellee's petition for visitation. A petition for reconsideration was filed and denied by Judge Zaleski on March 14, 1985. No appeal was filed by appellee.

On March 29, 1985, appellee filed the instant petition to confirm paternity. Appellants filed an answer raising the defense of res judicata as a result of the denial of appellee's petition for visitation. On April 1, 1985, a Petition to Confirm Acknowledgment of Paternity/Waiver of Trial was filed by Randall requesting that Howard be acknowledged as the father of the child since Howard had formally executed an Acknowledgment of Paternity.

On October 18, 1985, the trial court ordered that Mitchell would not be precluded from introducing evidence of paternity at trial. Randall's appeal from this order was quashed by our court on February 3, 1986.[2] After hearings were conducted on May 19 and 29, 1986, the trial court by order dated July 8, 1986, granted Mitchell's petition, finding him to be the father of the child at issue. From this order, a timely appeal was filed.

Two questions are presented on appeal:

    I.  Do the doctrines of res judicata and collateral estoppel bar reconsideration of a paternity claim when the

---

1.  Pursuant to the Uniform Act on Blood Tests to Determine Paternity, 42 Pa.C.S. § 6131 *et seq.*

2.  This appeal was docketed at 2918 Philadelphia, 1985.

issue was litigated and a final order was entered during a prior proceeding before a court of competent jurisdiction?

II. Did the lower court err in admitting the deposition testimony of Dr. William C. Sherwood, when Dr. Sherwood admitted and testified that he did not perform the HLA Blood Studies and related testing in question?

Appellant contends that since a paternity determination is a prerequisite for the grant of visitation, the initial denial of the petition for visitation is necessarily determinative of paternity. Therefore, the trial court erred in refusing to utilize the doctrines of res judicata and collateral estoppel by permitting a new trial to determine paternity.

In order for res judicata to apply to bar relitigation of an action, the court which previously addressed the matter on the merits must be of competent jurisdiction and there must be a concurrence of four conditions: (1) identity of issues, (2) identity of causes of action, (3) identity of persons and parties to the action, and (4) identity of the quality or capacity of the parties suing or sued. *Day v. Volkswagenwerk Aktiengesellschaft*, 318 Pa.Super. 225, 464 A.2d 1313 (1983).

In general "res judicata" is used to express three effects a final judgment may have on a subsequent suit: merger, bar and collateral estoppel. *Id.* Merger and bar arise when the second suit between the same parties involves the same cause of action as is involved in the first suit. *Id.* If the plaintiff wins, the cause of action merges into the judgment, precluding another suit on the same cause of action. *Id.* If the defendant loses, the cause of action is destroyed and he is barred from a second suit. Collateral estoppel, however, only operates when the second suit involves some of the same questions determined in the first suit but brought on a different cause of action.

We hold that an action brought on a Petition for Visitation and a Petition to Confirm Paternity are distinct

causes of action involving separate issues. This case began with Mitchell's Petition for Visitation. To establish his right to visitation Mitchell had to first establish that he was the father of the child. The trial court denied the Petition for Visitation, it did not find Mitchell to be the father nor did it exclude him. At most, the trial court found only that Mitchell was not entitled to visitation. The general rule is that the doctrine of res judicata cannot be applied to preclude a claim absent a final judgment on the merits of a previous action. *Bearoff v. Bearoff Brothers, Inc.*, 458 Pa. 494, 327 A.2d 72 (1974). *General Accident Fire and Life Assurance Corp., Ltd. v. Flamini*, 299 Pa.Super. 312, 445 A.2d 770 (1982).

In the first proceeding, Howard was not named until his identity was raised in Randall's Answer to the Petition. Howard then testified at the first hearing that he was the father of the child. However, for reasons not appearing of record, no blood test results were introduced into evidence. In the record of the trial court, accordingly, at the conclusion of the first hearing, there was still no determination of the identity of the child's father. The decision to deny Mitchell's petition for visitation did not result in a finding that Howard, who was not a party to that action, was the father of the child. Opinion 10/3/86 at 5. Opinion 10/31/86 at 4.

The trial court found neither res judicata nor collateral estoppel to be applicable to the issue of paternity. Instead the trial court determined that an exception to issue preclusion existed pursuant to the Restatement (Second) of Judgments § 28(2)(b) and (5).

The trial court stated:

The resolution of paternity is an issue of utmost importance that impacts on both property interests as well as familial interests. Moreover, a finding of paternity has long-term economic impact on both parents and children; and, more importantly, the creation of lifelong emotional bonds involved in the parent-child relationship. Accordingly, an incorrect decision based upon a technical but

necessary doctrine must yield to an opportunity to introduce reliable test results especially where such a test can conclusively exclude a party from parentage claims as well as where one of the parties in a subsequent action was not a party to the initial proceeding.

Opinion, 10/31/86 at 4.

\* \* \* \* \* \*

At the second proceeding to confirm paternity, the blood test results were admitted which conclusively excluded Mr. Howard as the father pursuant to 42 Pa.C.S.A. § 6136, and the finding that Mr. Mitchell had a probability of paternity of 98.72% from his HLA test was submitted with the other evidence presented to determine if Mr. Mitchell had met his burden of proof. See *Olson v. Dietz*, 500 A.2d 125 (Pa.Super.1985).

Opinion 10/31/86 at 5.

The trial court, therefore, determined:

to allow relitigation of the paternity question to avoid an inequitable administration of the paternity laws; and to prevent an adverse impact of an incorrect paternity decision on the public interest. That impact being where Ms. Randall was claiming that Mr. Howard was the father, and despite Mr. Howard's acquiescence in her assertion, he had already been scientifically excluded as the father of the child.

The public interest in assuring that children know who their biological parents are far outweighs the possible application of either *res judicata* or collateral estoppel to the facts of this case.

Opinion 10/31/86 at 5.

Upon thorough review of the record this Court is satisfied as was the trial court that Mitchell met his burden of proof establishing paternity. We find no error.

■ Randall claims that the lower court erred in admitting the testimony of the medical expert because he did not actually perform the HLA blood tests. The admission of expert testimony is a matter for the discretion of the trial

court and will not be remanded, overruled or disturbed unless there was a clear abuse of discretion. *Tyus v. Resta,* 328 Pa.Super. 11, 476 A.2d 427 (1984). The trial court admitted the medical expert's deposition testimony pursuant to 42 Pa.C.S.A. § 5936(b) without objection as to expert status of the doctor. *Miller v. Kriner,* 341 Pa.Super. 293, 491 A.2d 270 (1985). Our review of the record convinces us that an adequate foundation was laid for the introduction of the expert testimony. Appellant advances no case law or statute that would vitiate blood test results because the witness did not himself draw blood from the subjects or perform the tests but delegated these tasks to qualified technicians under his supervision. We find this issue to be without merit.

Having found no merit to either of appellant's arguments, the order of July 8, 1986 granting James Mitchell's Petition to Confirm Paternity and finding him to be the father of Aaron Randall is accordingly affirmed.

Order affirmed.